IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TICKET CENTER, INC.; TICKET PLAZA,
INC. d/b/a TICKET CENTER,

    Plaintiffs,

    v.

BANCO POPULAR DE PUERTO RICO
d/b/a TICKETPOP; POPULAR, INC.; XYZ
INSURANCE COMPANY,

    Defendants.

CIVIL NO. 04-2062 (GAG/BJM)

## OPINION AND ORDER

### PROCEDURAL BACKGROUND

Plaintiffs Ticket Center, Inc. and Ticket Plaza, d/b/a Ticket Center (collectively "Ticket Center" or "plaintiffs") filed an antitrust action against defendants Banco Popular de Puerto Rico ("Banco Popular") d/b/a Ticketpop, Popular, Inc., and XYZ Insurance Company (collectively "defendants"). (Docket No. 1). The action was brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Id. Plaintiffs also seek redress pursuant to Section 106(e) of the Bank Holding Company Act, 12 U.S.C. § 1975 (granting federal question jurisdiction to redress and enjoin violations involving anti-competitive tie-ins and conditional agreements of banking products), and various supplemental state tort and antitrust causes of actions. Id. Both parties consented to have the case heard by me pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Docket No. 61). Before the court is a motion to dismiss on grounds of *res judicata* and failure to join indispensable parties (Docket No. 116), plaintiffs' opposition (Docket No. 123), and defendant's reply (Docket No. 127).

## FACTUAL BACKGROUND

The following facts, taken from the complaint, must be accepted as true for the purposes of this motion. Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1,5 (1st Cir. 2005)

Ticket Center is a corporation engaged in the business of selling tickets for sports, cinema, and entertainment events. Ticket Center's marketing, sales, and distribution of tickets in Puerto Rico involve the use of computers, networks, call centers, advanced ticketing software, strategically located offices and distribution outlets, intensive use of the media and publicity, and direct coordination with promoters, sponsors, and other related participants in the sports, cinema and entertainment market. (Docket No. 1, p. 3-5).

In an attempt to upgrade the services it afforded, Ticket Center approached defendant Banco Popular during the early months of 1995, looking to explore a potential joint venture that could blend Banco Popular's ATM network and Ticket Center's business ideas, systems, and management team. At that time, Banco Popular was becoming one of the leading participants in the electronic transactions market. Id. at p. 6. For some time thereafter, Banco Popular received confidential information from Ticket Center, mainly by way of financial disclosures and direct inquiries and exchange of information regarding Ticket Center's business idea, the technology involved, and the potential market. During the exploratory period (between 1995 to 2000), Banco Popular continuously misrepresented to Ticket Center great interest in pursuing the business together. However, at different stages in the process, Banco Popular denied having the necessary technology expected by Ticket Center to upgrade the business. Id. Throughout the exploratory period, Banco Popular became "well schooled and knowledgeable" in the ticket product market. This know-how allegedly gave way to Banco Popular's creation of Ticketpop during the early months of 2002, sidestepping Ticket Center to eventually become its competitor. Ticket Center argues that it was Banco Popular's intention "to corner the market and monopolize the [ticket product market] in the future." Id. at p. 7. Specifically, Ticket Center avers that around the summer or fall of 2002, Banco Popular became aware of the close relationship among the sponsorship and promotions market, the

Ticket Center, Inc., et al vs. Banco Popular de Puerto Rico, et al                                                                 Page 3
Civ. No. 04-2062 (GAG/BJM)
Opinion and Order

electronic transfers market, and the ticket products market, and used its tremendous dominance in all three markets to "control, dominate and/or monopolize the ticket products market." Id. at p. 8.

The Coliseo de Puerto Rico José Miguel Agrelot ("Coliseo") comprises a substantial portion of the ticket product market in Puerto Rico. Id. at p. 12. A bidding process was opened by which ticket sales companies entered bids to secure the rights to sell tickets to events held at the Coliseo. Banco Popular was awarded the contract and exclusive rights to ticket sales for all Coliseo events. Id. at p. 13-14. Ticket Center, an unsuccessful bidder, alleges that Banco Popular conspired with the Puerto Rico Authority for the Financing of Industrial, Tourist, Educational, Medical and Environmental Control Facilities (known as "AFICA," pursuant to its Spanish acronym)[1] – the entity charged with overseeing the bidding process – and SMG Puerto Rico, L.P. ("SMG"), AFICA's advisor during the process, to fix the bid process and secure the exclusive rights to process ticket sales at the Coliseo. Id. at p. 12-13. In particular, Ticket Center alleges that AFICA/SMG deliberately ignored Banco Popular's non-compliance with several requirements in the request for proposal, improperly used Banco Popular's webpage, and hired a former Banco Popular employee during the bid review process. Id. at 12-13. Ticket Center twice appealed the decision to AFICA without success before challenging the award in the Puerto Rico court system, citing the same alleged irregularities in the bid process that it raised in the present complaint. Ticket Center's challenge in the Puerto Rico Court of Appeals apparently was dismissed for lack of jurisdiction, and the Puerto Rico Supreme Court denied certiorari. (See Docket No. 116, Exh. A (Ticket Center's petition for review); Exh. B, C).[2] The agency decision and the opinion by the Puerto Rico Court of Appeals were not submitted to the court.

---

[1] Section 1 of Act No. 185 of August 3, 2004 transferred title of the Coliseum from AFICA to the Convention Center District Authority. See "Transfer" Annotation to 23 L.P.R.A. § 6402. For simplicity's sake, I will refer to AFICA throughout this opinion and order rather than discussing both entities.

[2] Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir.1998) (documents that "defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim") (internal quotation marks and citation omitted).

# DISCUSSION

Banco Popular bases its motion to dismiss upon two arguments. It first argues that the claims in this case are barred pursuant to *res judicata*. (Docket No. 116, p. 3-8). Banco Popular next avers that the claims should be dismissed because Ticket Center failed to join necessary parties pursuant to Fed. R. Civ. P. 19. Id. at p. 8-9.

## I.   Res Judicata

Banco Popular's *res judicata* argument is something of a moving target. Initially, Banco Popular argued in its motion to dismiss that the Puerto Rico Court of Appeals ("PRCA") decision rejecting Ticket Center's challenge to AFICA's award of the bid should be afforded *res judicata* effect. Ticket Center responded by arguing that there was no final adjudication on the merits in the courts of Puerto Rico because the court dismissed the appeal for lack of jurisdiction. (Docket No. 123, p. 3-4). In reply, Banco Popular does not contest that the PRCA dismissed Ticket Center's challenge for lack of appellate jurisdiction, but changes its tactics by arguing that it was *AFICA's* decision to award the bid that should be afforded *res judicata* effect. (Docket No. 127). Both manifestations of the argument are addressed below, keeping in mind that "the burden of establishing the affirmative defense of *res judicata* rests upon the proponent." Davignon v. Clemmey, 322 F.3d 1, 17 (1st Cir. 2003).

Pursuant to federal statute, "judicial proceedings of any court of any ... State, Territory or Possession ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory or Possession."[3] 28 U.S.C. § 1738. This mandate "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). "The fact that a suit raises a federal

---

[3] Puerto Rico is the functional equivalent of a state for purposes of full faith and credit. See Cruz v. Melecio, 204 F.3d 14 18 n.2 (1st Cir. 2000); Medina v. Chase Manhattan Bank, 737 F.2d 140, 142 (1st Cir.1984).

Ticket Center, Inc., et al vs. Banco Popular de Puerto Rico, et al                                    Page 5
Civ. No. 04-2062 (GAG/BJM)
Opinion and Order

question or seeks to vindicate federal constitutional rights does not blunt the force of this command." Melecio, 204 F.3d at 18 (1st Cir. 2000), *citing* Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-85 (1984); Allen v. McCurry, 449 U.S. 90, 96-105 (1980).

To determine the preclusive effect of a decision by the courts of Puerto Rico, we must look to Puerto Rico law. Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000); see also Melecio, 204 F.3d at 18. The Puerto Rico Civil Code provides that "[i]n order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343. Under Puerto Rico law, claim preclusion requires a prior judgment on the merits that is "final y firme," or, "final and unappealable." See Melecio, 204 F.3d at 20; Worldwide Food Dis., Inc. v. Colon, 133 D.P.R. 827, 1993 WL 840035 (1993); Stitzer v. Univ. of Puerto Rico, 617 F. Supp. 1246, 1254 (D.P.R. 1985). Moreover, dismissal of an action for lack of jurisdiction is not considered to be "on the merits" and lacks preclusive effect. Stitzer, 617 F. Supp. at 1254, *citing* De Jesús v. Guerra Guerra, 105 D.P.R. 207, 1976 WL 40114 (1976); see also Muñiz Cortes, 229 F.3d at 14.

In this case, Banco Popular did not submit a copy of the PRTCA's opinion rejecting Ticket Center's challenge to the bid award. Regardless of this oversight, it is uncontested that the court of appeals dismissed the appeal for lack of jurisdiction. (See Docket No. 123, p. 3; Docket No. 127, p. 6). The PRCA's decision therefore does not constitute a final adjudication on the merits for the purposes of *res judicata*. See Stitzer, 617 F. Supp. at 1254; De Jesús, 105 D.P.R. 207, 1976 WL 40114; Muñiz Cortes, 229 F.3d at 14.

Nevertheless, *res judicata* may also apply "equally when the issue has been decided by an administrative agency, be it state or federal, which acts in a judicial capacity." Astoria Federal Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 107-08 (1991) (citation omitted); see also Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992). That is, "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties

Ticket Center, Inc., et al vs. Banco Popular de Puerto Rico, et al                                                   Page 6
Civ. No. 04-2062 (GAG/BJM)
Opinion and Order

have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966).  However, "[a]n agency granting or denying a privilege is not an adjudicative decision using procedures substantially similar to those employed by the courts." Metromedia Co. v. Fugazy, 983 F.2d 350, 366-67 (2d Cir. 1992).

In this case, Banco Popular has not met its burden to establish that AFICA's decision awarding the bid should granted *res judicata* effect with regard to plaintiff's antitrust claims. Initially, there is no evidence in the record that Ticket Center raised any of the claims it now makes against Banco Popular when it submitted its bid application documents, or that it was required to do so.  Although Ticket Center may have raised some of these claims in its two requests to AFICA for reconsideration (these requests are not part of the record, however), the record contains no indication that AFICA considered these arguments, ruled on them, or made any findings pertaining to them. In short, Banco Popular has not met its burden of establishing that AFICA was acting in an adjudicative capacity with respect to Ticket Center's antitrust arguments, or that Ticket Center was afforded an adequate opportunity to litigate its claims before the agency.

Moreover, courts have been especially reluctant to give *res judicata* effect to agency decisions when antitrust claims are involved.  In Borough of Ellwood City, Pennsylvania v. Pennsylvania Power Co., 570 F. Supp. 553 (W.D. Pa. 1983), the court held that a decision by an administrative law judge from the Federal Energy Regulatory Commission ("FERC") did not preclude antitrust claims in federal court "even though FERC ha[d] decided the main issue before the court." Id. at 558.  In that case, "FERC and the parties expended considerable time and expense developing and considering th[e] case. Discovery ... produc[ed] thousands of pages of material. The hearing before FERC lasted over four weeks, producing thousands of pages of testimony and exhibits. FERC made a thorough analysis of [one of the issues central to the antitrust claim]." Id. After analyzing the administrative proceeding, the court found that the issues in the administrative proceeding and in the federal action were "identical," but that "applicable precedent compels our

conclusion that the proceedings before FERC do not preclude our consideration of [plaintiffs' antitrust] claims." Id. at 559. Quoting an earlier decision, the court stated:

> [T]he mere fact that FERC may consider arguments based on antitrust concepts does not preclude later antitrust review. There is no certainty that use of the limited powers of the FERC can fully remedy an antitrust violation. Mere consideration of a claim does not rise to the level of complete disposition of the underlying violation.
> * * *
> [T]he actual determination of the legal structure of a price squeeze claim and its presence or absence here must remain in this court. (Citation omitted). Further, this court has remedial powers, in particular, injunctive and treble damage relief, which are not held by the FERC.

Id., *quoting* Borough of Ellwood City v. Pennsylvania Power Co., 462 F. Supp. 1343, 1349, 1351 (W.D.Pa.1979). Finally, the court held that, notwithstanding the fact that the FERC administrative decision was judicial in nature, "issue preclusion or collateral estoppel does not apply conclusively because Congress has placed antitrust jurisdiction in the district courts and because the courts can afford relief that FERC cannot provide." Borough of Ellwood City, 570 F. Supp. at 560.

The court in New England Liquor Sales Co., Inc. v. General Beverage Co., 1982 WL 1858 (D.Mass. 1982), came to a similar conclusion when considering whether an administrative decision by the Alcoholic Beverages Control Commission ("ABBC") was *res judicata* on federal antitrust claims. There, the court "conclude[d] the Commission did not in fact consider, nor could it have considered allegations ... of [defendant's] violations of the antitrust laws or the unfair and deceptive practice laws." Id. at *2. Setting forth the reasoning for its holding, the court stated that "[t]his court, in contrast [with the ABBC and the state courts,] must consider the broad range of issues raised by the unfair trade practices and antitrust claims. Although the evidence in both cases may overlap, we cannot say that both cases involve the 'same set of operative facts.'" Id. at *3, *citing* Lovely v. Laliberte, 498 F. 2d 1261 (1st Cir. 1974).

In this case, nothing on the record suggests that AFICA was empowered to adjudicate plaintiffs' antitrust claims, and nothing in the record suggests that it in fact did so. Accordingly, the motion to dismiss on *res judicata* grounds is **denied**.

Ticket Center, Inc., et al vs. Banco Popular de Puerto Rico, et al                                Page 8
Civ. No. 04-2062 (GAG/BJM)
Opinion and Order

**II.    Joinder of Necessary Parties**

Banco Popular avers that Ticket Center failed to join necessary parties pursuant to Fed. R. Civ. P. 19. (Docket No. 116, p. 8-9). In particular, Banco Popular contends that since one of the remedies sought in the complaint is Banco Popular's "divestiture" of its exclusive right to sell tickets for the Coliseo, then both AFICA and SMG must be brought in as defendants.

Rule 19(a) states that: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). Rule 19(a)(2) further provides that if a person has not been joined as required the court shall order that the person be made a party. Fed. R. Civ. P. 19(a)(2). If such joinder is not feasible, the court must then determine whether the action should proceed against the existing parties or be dismissed. Fed. R. Civ. P. 19(b).

Boiled down to its essence, Rule 19 requires that an action be dismissed if there is an absent party without whom complete relief cannot be granted, or whose interest in the dispute is such that to proceed without that party could substantially prejudice either that party or others. Hapag-Lloyd Container Linie, Gmbh v. Luis A. Ayala Colon Sucrs., Inc., 209 F.R.D. 285, 286 (D.P.R. 2002); see also Boulevard Bank Nat'l Ass'n v. Philips Medical Systems Int'l, 15 F.3d 1419, 1422 (7th Cir.1994).

In this case, Banco Popular argues that AFICA and SMG must be joined as parties because they are parties to the contract from which plaintiff seeks Banco Popular's divestiture. Generally, "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation

Case 3:04-cv-02062-GAG-BJM   Document 146   Filed 03/28/08   Page 9 of 10

Ticket Center, Inc., et al vs. Banco Popular de Puerto Rico, et al                                      Page 9
Civ. No. 04-2062 (GAG/BJM)
Opinion and Order

seeking to decimate that contract." Dawavendewa v. Salt River Project Agr. Imp. and Power Dist., 276 F.3d 1150, 1157 (9th Cir. 2002); see also, Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §1613 (2001) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required."). This is so for two reasons: first, an absent party to a contract may as a practical matter be impaired from protecting its interest; and second, the party to the lawsuit may face inconsistent obligations even if the contract were annulled because the absent contracting party would not be bound by any judgment and may still seek to enforce the contract.

Both of these interests dictate that SMG be made a party to this suit if this court is to entertain plaintiffs' request that Banco Popular be ordered to divest itself of its exclusive interest in selling tickets for the Coliseo. It is undisputed that Banco Popular has entered into a binding contract with SMG (acting as the manager of the Coliseo and as AFICA's agent) for the purpose of ticketing all events at the Coliseo. (Docket No. 71, Exh. 4).  SMG's absence indeed might impair its ability to protect its interests in having Banco Popular perform under the contract as agreed. Moreover, in the event that plaintiffs prevail in this case and the court orders Banco Popular to divest itself of its interest in the contract, Banco Popular might face litigation from SMG seeking to enforce the terms of the agreement or for other remedies. Pursuant to Rule 19(a)(2), Ticket Center is therefore ordered to join SMG as a defendant, or forfeit its requested remedy of Banco Poplular's divestiture from its exclusive engagement with respect to the Coliseo. Accordingly, Ticket Center is granted ten days to amend the complaint and thirty days to serve process on SMG.

The same finding does not hold for AFICA, however, since there is no evidence on record that AFICA has executed any agreement with Banco Popular; instead, AFICA has named SMG as its agent to manage the Coliseo and to enter into an agreement with Banco Popular. Moreover, any interest AFICA might have in this matter appears to be adequately represented by the presence of SMG as a party in this lawsuit. Accordingly, I find that AFICA is not a necessary party under Rule

19(a).

## CONCLUSION

In view of the foregoing, Ticket Center is granted ten calendar days from the date of this order to amend the complaint to include SMG as a defendant in relation to plaintiffs' requested remedy of Banco Popular's divestiture from its exclusive engagement to sell tickets for the Coliseo, and thirty days from the date of this order to serve process on SMG in accordance with Fed. R. Civ. P. 4. Banco Popular's motion to dismiss (Docket No. 116) is otherwise **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2008.

                                              **S/Bruce J. McGiverin**
                                              BRUCE J. McGIVERIN
                                              United States Magistrate Judge