IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TICKET CENTER, INC., et al.,

     Plaintiffs,

     v.

BANCO POPULAR DE PUERTO RICO
d/b/a TICKETPOP, et al.,

     Defendants.

Civil No. 04-2062 (GAG/BJM)

## OPINION AND ORDER

Plaintiffs Ticket Center, Inc. and Ticket Plaza, Inc. d/b/a Ticket Center (collectively "Ticket Center"), bring this case against Banco Popular de Puerto Rico and other defendants (collectively "Banco Popular") complaining of antitrust violations and violations of federal banking laws. (Docket No. 150). Defendants moved to dismiss the complaint, or in the alternative, for summary judgment. (Docket Nos. 164, 194). Plaintiffs duly opposed. (Docket No. 185). The parties submitted opposing statements of uncontested facts pursuant to Local Rule 56. (Docket Nos. 161, 184). Defendants also submitted a supplemental motion to dismiss, or in the alternative, for summary judgment (Docket No. 217) addressing issues raised in a court order (Docket No. 209), which plaintiffs opposed. (Docket No. 227). The parties have consented to proceed before me. (Docket No. 61).

## FACTUAL AND PROCEDURAL BACKGROUND

The following material facts, which will be viewed in the light most favorable to plaintiffs as the nonmoving party, are either undisputed or conclusively supported by the evidentiary record except where otherwise noted.[1]

---

[1] In determining what facts are supported by the evidentiary record, I have applied Local Rule 56(e):

    Facts contained in a supporting or opposing statement of material facts, if supported by

This case concerns alleged violations of antitrust laws and the Bank Holding Company Act brought by Ticket Center, a ticket sales business, against its competitor, Banco Popular, doing business as TicketPop. (Docket No. 150). In particular, Ticket Center claims that defendants "used their overwhelming market power to force upon customers exclusive use of additional less desired products and/or services ... to the detriment of competitors such as the plaintiffs, in a bold attempt to monopolize the relevant market." (Id., p. 1-2).

The background of the present dispute begins with extensive, ongoing negotiations between the parties, from 1995 through 2002, concerning a proposed joint venture that would benefit from a combination of Ticket Center's specific expertise in the ticket sales business with Banco Popular's automatic teller machine network. (Docket No. 150, ¶ 15-19; see also Docket No. 184, p. 13-14). During that time, Ticket Center provided confidential information to Banco Popular concerning the ticket sales business, technology, and market. (Id., ¶ 19). These negotiations, however, did not lead to the establishment of the proposed joint venture, and instead, Banco Popular in 2002 launched its own ticket sales processing division, TicketPop, which became a competitor of Ticket Center. (Id., ¶ 21). As of May 1999, Ticket Center had access to ninety-five percent of the ticket sales inventory for events in Puerto Rico, and by October 2002, had access to 90% of this inventory.[2] (Docket No. 161, ¶ 53, 54). Banco Popular, doing business under the name TicketPop, entered into its first agreement with an entertainment venue to process ticket sales in 2001, and began processing ticket sales for specific events in 2002. (Id., ¶ 55).

_____

record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

[2] Banco Popular asserted that Ticket Center "controlled" 95% of the market in 1999 and 90% in 2002; Ticket Center contested that it did not control the market but had "access" to this portion of the ticket sales inventory. (Docket No. 184, ¶ 30).

In 2001, TicketPop entered into an agreement with Cinemas Management – which was also a client of Banco Popular – for the development of an Internet-based ticket system to facilitate the sale of movie tickets in its movie theater chain, Caribbean Cinemas.  (Id., ¶ 2, 3).  It is undisputed – and attested by Cinemas Management President Robert Carrady – that Banco Popular did not condition the execution of the agreement on the purchase of another product or service, and Cinemas Management entered into the agreement freely and voluntarily without force or coercion from Banco Popular.  (Id., ¶ 4, 5).  However, Ticket Center asserts that Cinemas Management entered into the agreement "because Banco Popular was financing the expansion of Caribbean Cinemas movie theaters and/or otherwise providing substantial funds for sponsorship."  (Docket No. 184, ¶ 3).  Cinemas Management had negotiated a potential agreement with Ticket Center, leading to an agreement in principle in 2000, from which Cinemas Management withdrew in 2001 citing its alternate agreement with Banco Popular.  (Docket No. 184, ¶ 4,5).

In January 2002, Banco Popular entered into an agreement with Casa de los Tapes, which at the time was one of the leading record store chains in Puerto Rico.  (Docket No. 161, ¶ 10, 11).  Pursuant to the agreement, Casa de los Tapes agreed to serve as an outlet for the processing and administration of admission tickets through the TicketPop system.  It is undisputed – and attested by Casa de los Tapes owner, Anibal Jover – that Banco Popular did not condition the execution of the agreement on the purchase of another product or service and that Casa de los Tapes entered into the agreement freely and voluntarily without force or coercion by Banco Popular.  (Id., ¶ 12, 13; Docket No. 161-3, ¶ 4, 5).  Ticket Center contends, citing an unsworn declaration[3] of Ticket Center Vice-President Jose Ramon Grau, that Mr. Jover had represented to Mr. Grau that "he had to serve as an outlet for TicketPop/Banco Popular in the sale of entertainment event tickets because Popular provide[d] him with certain credit facilities for his business."  (Docket No. 184-3, ¶ 10 (cited by

---

[3] This and other unsworn declarations which Ticket Center provided in support of its opposition to summary judgment comply with the requirements of 28 U.S.C. § 1746 and, pursuant to that statute, may be accepted in place of the "affidavits" referenced in Rule 56.

Docket No. 184, ¶ 9)).

During 2002, TicketPop provided ticket processing services for two events at the Coliseo
Rubén Rodríguez in Bayamón, Puerto Rico.  (Docket No. 161, ¶ 27).  It is undisputed that Banco
Popular did not condition the use of its services on the purchase of another product or service and
that the promoter of those events entered into all agreements freely and voluntarily without force or
coercion by Banco Popular.  (Id., ¶ 30, 31).  Ticket Center contends, however, that the "sponsorship
provided by Banco Popular for these two events was excessive in comparison to the scope and
magnitude of the events" and that TicketPop "provided their services at below cost pricing."
(Docket No. 184, ¶ 22).  To the extent Ticket Center provides record evidence in support of these
assertions, it is only in an unsworn declaration provided by Ticket Center president Alberto Grau
not based on personal knowledge.[4]  (Id. (citing Docket No. 184-2, ¶ 7, 8).

A long-running dispute between the parties concerns Banco Popular's exclusive contract to
handle ticketing services for the José Miguel Agrelot Coliseum (the "Coliseum") entered into in
September 2004, which was also the subject of state court litigation.  (See Docket No. 161, ¶ 16- 24;
59-62).  As of June 2000, the Coliseum was owned by AFICA[5] and managed by SMG Puerto Rico,
L.P. ("SMG").  (Id., ¶ 18).  SMG advised AFICA in its selection of a ticket processing service
provider for the Coliseum.  (Id., ¶ 19).  Ticket Center made an offer to become the ticketing service
provider, but was not selected, and Ticket Center unsuccessfully challenged this decision in Puerto
Rico state courts.  (Id., ¶ 20).  Banco Popular also entered into a sponsorship agreement with the
Coliseum in September 2004.  (Id., ¶ 22).  The SMG executive responsible for negotiating the

_____

[4] Ticket Center also provides evidence of promotional material advertising a discount on the
ticket price when purchased through Banco Popular's ATM system.  (Docket No. 184-6).  Neither this
exhibit nor the cited affidavit supports the assertion that Banco Popular provided "below cost pricing."
Moreover, this Spanish-language exhibit fails to comply with Local Rule 10(b), which requires that all
Spanish language documents presented to the court be accompanied with an English translation.

[5] The full name of AFICA is the Autoridad de Puerto Rico para el Financiamiento de Facilidades
Industriales, Turísticas, Médicas, para la Educación y el Control de Contaminación Ambiental.

sponsorship agreement, Jochi Dávila, attested that Banco Popular did not condition the signing of the sponsorship agreement on the Coliseum's use of TicketPop ticketing services or any other Banco Popular services. (Id., ¶ 23 (citing Docket No. 161-4, ¶ 8)). Dávila further attested that SMG entered into its sponsorship agreement with Banco Popular freely and voluntarily without force or coercion from Banco Popular. (Id., ¶ 24 (citing Docket No. 161-4, ¶ 9)). Ticket Center does not directly contest these facts, but contends that "from the outset" the Coliseum's process for the selection of its ticketing services provider was "highly suspect". (Docket No. 184, ¶ 19). In support of this assertion, Ticket Center cites only to its own pleadings in the state court cases. (Id. (citing Docket No. 161-12, 161-13)).

In August 2003, Banco Popular provided both sponsorship and ticket processing services to the Puerto Rico Basketball Federation's "Torneo Pre-Olímpico" (the "Torneo"). (Docket No. 161, ¶ 34-38). Hector Martínez Souss, who was responsible for negotiating both agreements for the Torneo, attested that Banco Popular did not condition the purchase of sponsorship on the use of the TicketPop facilities or on the purchase of any other Banco Popular products or services. (Id., ¶ 36 (citing Docket No. 161-6)). Mr. Martínez Souss also attested that he entered into all agreements with Banco Popular freely and voluntarily without force or coercion by Banco Popular. (Id., ¶ 38 (citing Docket No 161-6)). Ticket Center contends that Mr. Martínez Souss engaged in conversations with Ticket Center concerning the provision of ticketing services for the Torneo, but Mr. Martínez Souss informed Ticket Center that he could not select Ticket Center as the ticketing services provider "because he was tied to Banco Popular." (Docket No. 184, ¶ 24). As support for this assertion, Ticket Center cites an unsworn declaration by its operations manager, Noland Otero Caballero, repeating a statement that Mr. Martínez Souss made to him at an unspecified time and location. (Id. (citing Docket No. 184-5)).

In October 2003, Banco Popular provided ticket processing services to the Puerto Rico Grand Prix. (Docket No. 161, ¶ 39-43). Jorge Díaz, who was responsible for negotiating both agreements for the Grand Prix, attested that Banco Popular did not condition the purchase of sponsorship on the

use of the TicketPop facilities or on the purchase of any other Banco Popular products or services.
(Id., ¶ 41 (citing Docket No. 161-7)).  Díaz also attested that he entered into all agreements with
Banco Popular freely and voluntarily without force or coercion by Banco Popular.  (Id., ¶ 43 (citing
Docket No 161-7)).  Ticket Center contends that Díaz's wife, Eugenia Díaz, informed Ticket Center
that Banco Popular "had demanded Ticketpop to be the exclusive provider of ticketing services for
the said event."  (Docket No. 184, ¶ 26).  As support for this assertion, Ticket Center cites an
unsworn declaration by its president, Alberto Grau, repeating a statement that Mrs. Díaz made to
him, and a September 2003 letter from Ticket Center to Banco Popular referencing the exclusivity
clause in Banco Popular's Grand Prix agreement.[6]  (Id. (citing Docket No. 184-2)).  Ticket Center
also contends that a Banco Popular affiliate, Popular Auto, "was a sponsor and/or participated in the
Puerto Rico Grand Prix," again citing only to Mr. Grau's unsworn declaration statement not based
on personal knowledge.  (Id., ¶ 27).

      In 2003 and 2004, Banco Popular provided a line of credit for Major League Baseball
("MLB") games taking place in the Hiram Bithorn Stadium in San Juan, Puerto Rico.  (Docket No.
161, ¶ 46-47).  It is undisputed that Banco Popular did not condition the provision of the line of
credit on the use of the TicketPop ticketing services or on the purchase of any other Banco Popular
products or services.  (Id., ¶ 47).  Banco Popular also provided sponsorship and  the ticket processing
services for all of the MLB games in Puerto Rico.  (Id., ¶ 48).  Antonio Muñoz, Jr., who was
responsible for negotiating MLB's sponsorship and ticketing services agreements, testified in a
deposition that Banco Popular did not condition signing the sponsorship agreement on the use of
TicketPop ticketing services.  (Id., ¶ 50 (citing Docket No. 161-9; 180-3, p. 11, 13-14)).  Mr. Muñoz,
Jr., also testified that MLB entered into its sponsorship agreement with Banco Popular freely and
voluntarily without force or coercion by Banco Popular.  (Id., ¶ 51 (citing Docket No. 161-9; 180-3,

--------

     [6] This Spanish language exhibit also fails to comply with Local Rule 10(b) and no English-
language translation has been filed subsequently.

**OPINION AND ORDER**

p. 3, 15-20)).  Ticket Center does not dispute these facts, but contends that it is relevant that Banco Popular was at the time providing approximately $200 million in financing to the real estate and development business of Antonio Muñoz, Sr.   (Docket No. 184, ¶ 28).

Ticket Center commenced the present action in October 2004.  Banco Popular moved to dismiss the case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on various abstention doctrines, and that motion was denied in November 2005. (Docket Nos. 10, 38).  Banco Popular then moved to dismiss the action for failure to state a claim pursuant to Rule 12(b)(6), which was denied in April 2006. (Docket Nos. 47, 83).  Banco Popular made a supplemental motion to dismiss based on a state action doctrine, which was also denied.  (Docket Nos. 71, 99).  Next, Banco Popular moved to dismiss on the grounds of res judicata and failure to join indispensable parties. (Docket No. 116).  The court denied the motion to dismiss but found that Ticket Center had indeed failed to join an indispensable party, SMG, and ordered Ticket Center to amend its complaint to join SMG.  (Docket No. 146).  Ticket Center filed an amended complaint joining SMG, and SMG successfully moved to dismiss the complaint as to SMG.  (Docket Nos. 150, 160, 209).  In the motion now before the court, Banco Popular moved to dismiss the amended complaint based on Rule 12(b)(6) and in the alternative, for summary judgment, filing an accompanying Statement of Uncontested Facts. (Docket Nos. 164, 161, 180).  Ticket Center duly opposed. (Docket Nos. 184, 185).  Banco Popular replied and submitted a supplemental motion to dismiss.  (Docket Nos. 191, 194).  The parties have consented to proceed before me, in accordance with 28 U.S.C. § 636(c) and Federal Rule 73.  (Docket No. 61).

Before proceeding to the analysis of the present motions, I must address one ancillary matter. In July 2008, Ticket Center moved to submit supplemental support for its opposition.  (Docket No. 189).  Specifically, Ticket Center asserted that it had sought to obtain an unsworn declaration from a third-party witness, Javier López, which would directly contradict a statement in Banco Popular's Statement of Uncontested Facts concerning statements made by Caribbean Cinemas principal Robert Carrady.  (Id.).  However, Mr. López ultimately decided not to sign the declaration for the reason,

according to declarations by Ticket Center president Mr. A. Grau and Ticket Center counsel José Vazquez, that he feared retaliation by Banco Popular in a separate business venture. (Id. (citing Docket No. 189-2)). Instead, Ticket Center sought to offer Mr. López's testimony into evidence through Mr. A. Grau's and Mr. Vazquez's unsworn declarations and through a copy of the unsigned, draft declaration that Mr. López had declined to sign. (Id. (citing Docket No. 189-2)). Banco Popular responded by moving to strike, and Ticket Center opposed the motion to strike. (Docket Nos. 193, 200). In its opposition to the motion to strike, Ticket Center stated that it had subsequently deposed Mr. López, and asserted that his deposition testimony was consistent with the statements made in the evidence it had moved to submit. (Docket No. 200). In support of this assertion, however, Ticket Center did not cite to any particular page or line of the deposition, but rather attached the entire hundred-page deposition transcript to its filing. (Id.).

For the following reasons, Ticket Center's motion to submit supplemental evidence is denied. First, Mr. Grau's and Mr. Vazquez's unsworn declarations attesting to a conversation they had with Mr. López in which he recited statements made by Mr. Carrady clearly constitutes hearsay, or more accurately, double hearsay. "It is black-letter law that hearsay evidence cannot be considered on summary judgment." Dávila v. Corporación de P.R. Para la Difusión Publica, 498 F.3d 9, 17 (1st Cir. 2007). Second, the draft declaration that Ticket Center claims Mr. López would have signed but for his supposed fear of retaliation has no evidentiary weight whatsoever. Moreover, Ticket Center's attempt to place the entire deposition transcript in evidence is impermissible under First Circuit law and the local rules of this court. See D.P.R. R. 56(e) (a statement of fact "shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion"); CMI Capital Mkt. Inv., LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008) (district court does not have "responsibility to ferret through the record to discern whether any material fact is genuinely in dispute"). Therefore, Ticket Center's motion to submit supplemental material is **DENIED**, and Banco Popular's motion to strike is moot.

I note that while Banco Popular moved to dismiss the complaint, and in the alternative, for

summary judgment, I find that its motion is most appropriately treated as one for summary judgment.

When a motion to dismiss is accompanied by matters outside the pleadings a court may treat it as

a summary judgment motion brought pursuant to Rule 56.  Fed. R. Civ. P. 12(b).  Moreover, Banco

Popular has already brought multiple motions to dismiss the complaint on various grounds.  While

the instant motion ostensibly moves to dismiss the most recently amended complaint, that complaint

differed from the original only in adding a party.  Defendants also cite the Supreme Court's recently-

articulated revised standard on a motion to dismiss, which "retire[d]" the prior standard.  See Bell

Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1969 (2007).  However, given the

attachment of additional matters outside the pleadings, and the late stage of the litigation – trial is

scheduled for January 2009 – it is more appropriate to treat the motion as one for summary

judgment.  While plaintiffs complain that the case is not ripe for summary judgment, they in the

same breath complain of Banco Popular's many bites at the motion-to-dismiss apple.  Four years

after the case was filed (notwithstanding a year-long stay of discovery (Docket No. 107)), after the

close of discovery (Docket No. 133), after the deadline for filing dispositive motions (Id.), and only

a few months prior to trial[7], this argument has no merit.  Moreover, plaintiffs could have made a

motion to extend discovery under Rule 56(f), but did not.  For these reasons, I treat the motion as

one for summary judgment.

## DISCUSSION

## I.      Standard of Review on Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  A fact is material only if it "might affect the outcome of the suit under

---

[7] Moreover, at all times that the parties were briefing the present motion, trial was scheduled for
September 2008.  (Docket Nos. 206, 207 (granting motion to continue and vacating scheduled trial date)).

the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining if a material fact is "genuine," the court does not weigh the facts but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.; Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact."  Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once this threshold is met, the burden shifts to the nonmoving party.  The nonmovant may not rest on mere conclusory allegations or wholesale denials.  Fed. R. Civ. P. 56(e); Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).  Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" and support such facts with "affidavits... made on personal knowledge ... set[ting] forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).  In particular, "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment." Dávila, 498 F.3d at 17.

Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Of course, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party."  Leary, 58 F.3d at 751.  Still, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim.  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## II.    Analysis

Banco Popular argues that summary judgment should be granted in its favor on counts I, II, III, IV, and VI because there is no dispute of material fact as to any claim of tying arrangements under the Bank Holding Company Act (the "BHCA"), the Sherman Act, or Puerto Rico's antitrust

statute, and also, that summary judgment should be granted on counts V and VI because there is no

genuine dispute as to a claim of attempted monopolization.[8]

### A.       Tying Claims

Plaintiffs bring five separate causes of action complaining of violations of various sets of

laws which each prohibit tying arrangements.  First, the Sherman Act, the federal antitrust statute,

deems certain contractual arrangements illegal restraints of trade.  15 U.S.C. § 1.  (See Docket No.

150, p. 19 (Count IV)).  The Supreme Court has long interpreted this provision to mean that certain

tying arrangements are improper by virtue of "the seller's exploitation of its control over the tying

product to force the buyer into the purchase of a tied product that the buyer did not want at all, or

might have preferred to purchase elsewhere on different terms."  Jefferson Parish Hospital District

No. 2 v. Hyde, 466 U.S. 2, 12 (1983).  Second, the BHCA prohibits a bank from conditioning the

provision of credit or any other service on a requirement that the customer obtain any additional

service from the bank or from any subsidiary of the bank.  12 U.S.C. § 1972(1)(A), (B), (E).  (See

Docket No. 150, p.16-18 (Counts I-III)).  Finally, the Puerto Rico antitrust laws, 10 L.P.R.A. 258 and

260, track the language of the Sherman Act.

### 1.       Sherman Act Tying Claim (Count IV)

Antitrust law jurisprudence provides that certain alleged improper practices are illegal *per

se*, or as a matter of law, while others are determined to be illegal through the "rule of reason," or

an analysis of the market context in which the arrangement is found.  Jefferson Parish, 466 U.S. at

9.  The Supreme Court has repeatedly held that certain tying arrangements "pose an unacceptable

risk of stifling competition and therefore are unreasonable '*per se*.'"  Id.  There are four elements of

a *per se* tying claim: (1) the tying and tied products must actually be two distinct products; (2) there

is an agreement or condition, express or implied, that establishes a tie between the two products; (3)

---

[8] Banco Popular's motion does not appear to directly address count VII, which is based on Puerto
Rico tort law.

**OPINION AND ORDER**

the entity accused of tying has sufficient market power for the tying product to distort consumers'
choices with respect to the tied product; and (4) the tie forecloses a substantial amount of commerce
in the market for the tied product.  Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147,
1178 (1st Cir. 1994).

　　　While Ticket Center is unclear in both its complaint and papers on this motion exactly which
products it views as the tying and tied products, Ticket Center generally claims that Banco Popular
conditioned the provision of its financing services and sponsorship services (the tying product) to
the sale of its ticket processing services (the tied product).  (Docket No. 150, ¶ 28).  The record
contains examples of various potential tying arrangements, and the material facts concerning each
instance will be considered in turn.

　　　Ticket Center claims that in 2001 Cinemas Management entered into an agreement for
TicketPop to sell movie tickets for the Caribbean Cinemas theater chain "because Banco Popular
was financing the expansion of Caribbean Cinemas movie theaters and/or providing substantial
funds for sponsorship." (Docket No. 184, ¶ 3).  Ticket Center appears to claim that Banco Popular's
provision of either financing or sponsorship funds was conditioned on the use of TicketPop's ticket
services.  Banco Popular argues there is no genuine issue of material fact concerning this set of facts
because it is undisputed that Banco Popular did not condition the execution of the agreement on the
purchase of another product or service and that Cinemas Management entered into the agreement
freely and voluntarily without force or coercion by Banco Popular.  (Id., ¶ 4, 5).

　　　Ticket Center, in response, has not provided any further specificity as to precise financing
or sponsorship products that constituted the tying products.  The law requires Ticket Center to
ultimately prove that Banco Popular "enjoys either a monopoly or 'appreciable economic power'
('AEP') in the 'tying' product (or service) market."  Lee v. Life Ins. Co. of N. Am., 23 F.3d 14, 16
(1st Cir. 1994).  Ticket Center may demonstrate Banco Popular's AEP in the markets for financing
or sponsorship services by showing that Banco Popular (1) holds a monopoly in either of those
markets; (2) controls a very large share of the sales in the tying product market; (3) or produces a

unique tying product and therefore faces no significant competition from functionally similar products or services.  Id., 23 F.3d at 16-17.  However, Ticket Center has failed to provide any information concerning the composition of the markets for either financing or sponsorship funds[9], and the record is devoid of any evidence raising a genuine issue as to whether Banco Popular enjoys AEP in those markets.

The Caribbean Cinema example further fails because Ticket Center does not offer any admissible evidence concerning the existence of a tie between the two products.  Ticket Center's sole evidence comes from an affidavit from Ticket Center principal Mr. J. Grau providing only inadmissible hearsay based on a conversation with Caribbean Cinemas president Robert Carrady, in which he states that Mr. Carrady told him that Caribbean Cinemas "had to go with Banco Popular as ticketing services provider, because the bank was affording him certain credit facilities for the construction and expansion of his movie theaters, and Banco Popular represent[s] 100th [sic] of thousands of dollars in advertising revenues for his business."  (Docket No. 184-3, ¶ 7).  This is insufficient to satisfy Ticket Center's burden.[10]  Dávila, 498 F.3d at 17 (non-moving party on summary judgment must provide admissible evidence – not hearsay – to satisfy its burden).

Ticket Center's next example contends that Casa de los Tapes entered into an agreement with Banco Popular to serve as a TicketPop outlet because Banco Popular provided a line of credit and other credit facilities to Casa de los Tapes.  (Docket No. 184, ¶ 9).  Banco Popular argues that there is no genuine issue here because it is undisputed – and attested by Casa de los Tapes owner, Aníbal

---

[9] Banco Popular also raises a compelling argument that sponsorship funds do not constitute a product for purposes of the tying analysis, pointing out that in such cases Banco Popular is actually *purchasing* advertising and other benefits from the sponsored entity, rather than selling a product or service itself.

[10] While Mr. Grau's testimony may be admissible at trial in order to impeach Mr. Carrady's testimony or to refresh Mr. Carrady's memory of the statement, Fed. R. Evid. 613, 612, it would be inadmissible under Rule 801(d)(1) to prove the truth of the matter asserted (*i.e.*, that Banco Popular conditioned its provision of financial services and advertising placement on use of TicketPop's ticketing services).  See Finn v. Consolidated Rail Corp., 782 F.2d 13, 16, n.4 (1st Cir. 1986).

Jover – that Banco Popular did not condition the execution of the credit agreement on the purchase of another product or service and that Casa de los Tapes entered into the agreement freely and voluntarily without force or coercion by Banco Popular.  (Id., ¶ 12, 13; Docket No. 161-3, ¶ 4, 5). In response, Ticket Center offers only the inadmissible hearsay testimony of its principal Mr. J. Grau purporting to describe a conversation with Mr. Jover.  (Docket No. 184-3, ¶ 10).  Again, such evidence is inadmissible and cannot satisfy Ticket Center's burden.[11]  See Dávila, 498 F.3d at 17. Moreover, Ticket Center has not presented any evidence concerning Banco Popular's share of the market for the tying product, here lines of credit and credit facilities.  See Lee, 23 F.3d at 16-17.

Ticket Center next contends that the Coliseo Rubén Rodríguez in Bayamón, Puerto Rico (the "Coliseo"), entered into a ticket services agreement with TicketPop because Banco Popular provided "excessive" sponsorship services for the same events.  (Docket No. 184, ¶ 22).  Banco Popular argues that there is no genuine issue as to this example because it is undisputed that Banco Popular did not condition the use of its services on the purchase of another product or service and the promoter of those events entered into all agreements freely and voluntarily without force or coercion by Banco Popular.  (Docket No. 161, ¶ 30, 31).  In response, Ticket Center provides only the affidavit of Mr. A. Grau stating that the Coliseo initially engaged Ticket Center to provide initial duties for the event before exclusively engaging TicketPop, and that "[t]o the best of [his] knowledge, Banco Popular provided excessive sponsorship" for the events at the Coliseo.  (Docket No. 184-2, ¶ 7).  This testimony fails to satisfy Ticket Center's burden because (1) the statement about Banco Popular's "excessive sponsorship" is not based on personal knowledge as required by Rule 56(e), and (2) even if these statements are assumed to be true and admissible, they do not establish a genuine dispute of material fact as to whether Banco Popular impermissibly tied its

---

[11] While Mr. Grau's testimony may be admissible at trial in order to impeach Mr. Jover's testimony or to refresh Mr. Jover's memory of the statement, Fed. R. Evid. 613, 612, it would be inadmissible under Rule 801(d)(1) to prove the truth of the matter asserted (i.e., that Banco Popular conditioned its provision of financial services on Casa de los Tapes acting as a TicketPop outlet).  See Finn, 782 F.2d at 16, n.4.

sponsorship to the use of TicketPop services.  Moreover, Ticket Center has not presented any evidence concerning Banco Popular's share of the market for sponsorship funds.  See Lee, 23 F.3d at 16-17.

Ticket Center also complains that TicketPop was selected to be the ticketing services provider for the Coliseum in exchange for Banco Popular's agreement to serve as a sponsor of the Coliseum.  (Docket No. 150, ¶ 28(d)).  Banco Popular argues that there is no genuine issue that the facts concerning the Coliseum constitute a tying claim because Mr. Dávila, who was responsible for negotiating the sponsorship agreement, attested that Banco Popular did not condition the signing of the sponsorship agreement on the Coliseum's use of TicketPop ticketing services or any other Banco Popular services and that his company entered into its sponsorship agreement with Banco Popular freely and voluntarily without force or coercion by Banco Popular.  (Docket No. 161, ¶ 23, 24 (citing Docket No. 161-4, ¶ 8, 9)).  Ticket Center does not directly contest these facts, but contends, however, that "from the outset" the Coliseum's process for the selection of its ticketing services provider was "highly suspect".  (Docket No. 184, ¶ 19).  In support of this assertion, Ticket Center cites only to assertions in its own state court pleadings, and not to any admissible evidence.  (Id. (citing Docket No. 161-12, 161-13).  Therefore, Ticket Center has not satisfied its burden and fails to raise a genuine issue of material dispute with respect to any alleged tying arrangements in connection with the Coliseum contract.  Moreover, Ticket Center has not presented any evidence concerning Banco Popular's share of the market for sponsorship funds.  See Lee, 23 F.3d at 16-17.

Ticket Center also contends that Banco Popular tied its sponsorship of the Torneo basketball event to the use of TicketPop services.  (Docket No. 184, ¶ 24).  Banco Popular contends that there is no issue of genuine dispute with respect to this set of facts because Mr. Martínez Souss, who was responsible for negotiating both the sponsorship and ticketing agreements, attested that Banco Popular did not condition the purchase of sponsorship on the use of the TicketPop facilities or on the purchase of any other Banco Popular products or services and that he entered into both agreements freely and voluntarily without force or coercion.  (Docket No. 161, ¶ 36, 38 (citing

Docket No. 161-6)).  In response, Ticket Center offers only the inadmissible hearsay testimony of its employee, Mr. Otero Caballero, purporting to describe a statement made by Mr. Martínez Souss concerning his relationship with Banco Popular.  (Docket No. 184, ¶ 24 (citing Docket No. 184-5)). Such hearsay evidence is inadmissible and fails to satisfy Ticket Center's burden.[12]  See Dávila, 498 F.3d at 17.  Moreover, Ticket Center has not presented any evidence concerning Banco Popular's share of the market for sponsorship funds.  See Lee, 23 F.3d at 16-17.

Ticket Center also suggests that there was some impropriety in TicketPop's provision of services for the Puerto Rico Grand Prix.  (Docket No. 184, ¶ 26-28).  Banco Popular argues that there is no genuine issue with regard to the Grand Prix because Mr. Díaz, who was responsible for negotiating both ticketing and sponsorship agreements for the Grand Prix, attested that Banco Popular did not condition the purchase of sponsorship on the use of the TicketPop facilities or on the purchase of any other Banco Popular products or services and that he entered into all agreements freely and voluntarily without force or coercion.  (Docket No. 161, ¶ 41, 43 (citing Docket No 161-7)).  Ticket Center offers various responses.  First, Ticket Center offers the double hearsay statement from its principal, Mr. A. Grau, that Mr. Díaz's wife informed him that Banco Popular "had demanded Ticketpop to be the exclusive provider of ticketing services for the said event."  (Docket No. 184, ¶ 26).  Even putting aside the fact that this statement is inadmissible hearsay, this testimony fails to establish a tie between the ticketing services and any other product or service.  Second, Ticket Center contends that a Banco Popular affiliate, Popular Auto, "was a sponsor and/or participated in the Puerto Rico Grand Prix," again citing only to Mr. Grau's unsworn declaration statement not based on personal knowledge and again, not establishing  a tie between Popular Auto's sponsorship and TicketPop's service contract.  (Id., ¶ 27).  Finally, Ticket Center does not present any evidence

---

[12] While Mr. Otero Caballero's testimony may be admissible at trial in order to impeach Mr. Martínez Souss's testimony or to refresh Mr. Martínez Souss's memory of the statement, Fed. R. Evid. 613, 612, it would be inadmissible under Rule 801(d)(1) to prove the truth of the matter asserted (i.e., that Banco Popular conditioned its sponsorship of the Torneo on the use of TicketPop services).  See Finn, 782 F.2d at 16, n.4.

concerning Banco Popular's share of the market for sponsorship funds.  See Lee, 23 F.3d at 16-17.

    In a final example, Ticket Center suggests that TicketPop's provision of services for MLB games in 2002 and 2003 was improper due to Banco Popular's provision of a line of credit to MLB, sponsorship services, or financing to an unrelated business.  (Docket No. 184, ¶28; 150, ¶ 23). Banco Popular argues that there is no genuine issue of material fact because it is undisputed that Banco Popular did not condition the provision of the line of credit on the use of the TicketPop ticketing services or on the purchase of any other Banco Popular products or services.  (Docket No. 161, ¶ 47).  Banco Popular also argues that there is no issue of a tie between the ticketing and sponsorship services because Mr. Muñoz, who was responsible for both agreements, testified in a deposition that Banco Popular did not condition signing the sponsorship agreement on the use of TicketPop ticketing services and that MLB entered into the agreement freely and voluntarily without coercion or force.  (Id., ¶ 50, 51 (citing Docket No. 161-9; 180-3, p. 3, 11, 13-20)).  In response, Ticket Center does not dispute these facts, but instead attempts to submit evidence that at the time the agreements were entered into, Banco Popular was providing approximately $200 million in financing to the separate real estate and development business of the senior Mr. Antonio Muñoz. (Docket No. 184, ¶ 28).  In support of its statement of fact, Ticket Center offers as evidence a portion of the Spanish-language deposition transcript of Mr. Muñoz, Sr., without an accompanying translation and without citing to a specific page number, circumstances that render the transcript inadmissible under this court's local rules.  D.P.R.R. 10(b); 56(e) ("[an] assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion").  However, even if the transcript were admissible, the excerpted portion does not establish a tie between Banco Popular's financing services and TicketPop's ticketing services contract.  Again, Ticket Center does not present any evidence concerning Banco Popular's share of the market for sponsorship funds, lines of credit, or the type of financing received by the real estate and development business.  See Lee, 23 F.3d at 16-17.

    None of the foregoing examples raises a genuine issue of material fact as to any alleged tying

practices. Assuming the tying and tied products are, respectively, sponsorship services or some sort of financial services, and Ticketpop's ticketing services, there is no evidence of "an agreement or condition, express or implied, that establishes a tie." Data Gen. Corp., 36 F.3d at 1178-1179. Banco Popular  has submitted testimony from the individual at the corresponding business who was responsible for the sponsorship or financial services agreements, and, in some cases, the ticketing services agreements.  In each case, the testimony evidences that there was no express or implied agreement establishing a tie between the two sets of services.

While the absence of any tying or conditioning agreements is sufficient to require summary judgment for Banco Popular, Ticket Center has also failed to show a negative effect on the ticket services market as a result of the alleged tying.  The fourth factor in the tying analysis examines whether competition in the market for the tied product has been foreclosed as a result of the tie. Id., 36 F.3d at 1178.  In support of its motion, Banco Popular offers the undisputed fact that Ticket Center controlled, or at least had access to the inventory of, 95% of ticket sales in 1999 and 90% in 2002, although it does not offer any more recent statistics about market share.  (Docket No. 161, ¶ 53, 54).  Banco Popular also offers evidence that the two ticket processors alleged to have been forced out of business by Banco Popular actually failed because they did not have enough business volume to subsist.  (Id., ¶ 56 (citing Docket No. 180-4, p. 4-5)).  It is also undisputed that, along with Ticket Center, a third competitor, Ticket Box, is still in business.  (Id., ¶ 57).  This evidence is sufficient to shift the burden to Ticket Center on this element.  See Fed. R. Civ. P. 56(e).  Ticket Center's response does not provide any evidence concerning TicketPop's share of the ticket processing market or of the market composition more generally.  Without any information concerning the relevant markets, "it is impossible to discern what effect, if any, [defendant's] alleged tying may have in 'foreclosing' commerce in the ... market."  CCBN.com, Inc. v. Thomson Financial, Inc., 270 F. Supp. 2d 146, 156 (D. Mass. 2003).  See also Jefferson Parish, 466 U.S. at 17 ("any inquiry into the validity of a tying arrangement must focus on the market or markets in which the two products are sold").  Thus, Ticket Center's response fails to demonstrate a genuine

dispute of material fact with respect to the fourth element of a tying claim.

Therefore, summary judgment on the fourth cause of action alleging violations of the Sherman Act, 15 U.S.C. § 1, is granted for Banco Popular.

### 2.       Bank Holding Company Act Claims (Counts I-III)

The BHCA prohibits a bank from conditioning the provision of credit or any other service on a requirement that the customer obtain any additional service from the bank or from any subsidiary of the bank.  Specifically, the BHCA provides in relevant part, "A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement  (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service; [or] (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company; [or] . . .  (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company, of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit."  12 U.S.C. § 1972(1).

Courts have viewed the BHCA as an extension of the Sherman Act's prohibition of anti-competitive tying to the field of commercial banking, without requiring the plaintiff to prove anti-competitive effect or market power.  Baggett v. First Nat'l Bank, 117 F.3d 1342, 1346 (11th Cir. 1997).  Other courts have included some reference to "anti-competitive" effect in the elements:  (1) the bank imposed an anti-competitive tying arrangement; (2) the arrangement was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the bank.  Highland Capital, Inc. v. Franklin Nat'l Bank, 350 F.3d 558, 565 (6th Cir. 2003).  See also Mamot Feed Lot & Trucking v. Hobson, 539 F.3d 898, 904 (8th Cir. 2008) (substantially identical elements).  In either case, Ticket Center's BHCA claims fail because the record contains no genuine dispute that any tying arrangements existed.

As discussed above, the undisputed facts and evidence on this motion demonstrate that, for each of the business arrangements alleged in the complaint, Banco Popular did not tie its provision of financial services or sponsorship services to the use of TicketPop ticketing services.  Ticket Center has failed to provide contrary evidence sufficient to satisfy its burden on summary judgment. Ticket Center's BHCA claims therefore warrant summary judgment, and summary judgment on the first, second, and third causes of action is granted for Banco Popular.

### B.        Sherman Act Monopolization Claims (Count V)

Banco Popular argues that Ticket Center's fifth cause of action is also ripe for summary judgment.  Ticket Center claims that Banco Popular violated section 2 of the Sherman Act, which prohibits "monopolization" and attempts to monopolize. 15 U.S.C. § 2.  To successfully prove a monopolization claim, a plaintiff must show that (1) the defendant has monopoly power, and (2) the defendant has engaged in "impermissible exclusionary practices with the design or effect of protecting or enhancing its monopoly position." Coastal Fuels Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st Cir. 1996).  To succeed on an attempted  monopolization claim, a plaintiff must show: that the defendant engaged in (1) predatory or anti-competitive conduct (2) with a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. Spectrum Sports v. McQuillan, 506 U.S. 447, 457 (1993).  In determining whether a party has monopoly power or could acquire monopoly power in a given market, it is generally necessary to consider "the relevant market and the defendant's ability to lessen or destroy competition in that market." Coastal Fuels Inc., 79 F.3d at 196 (citing Spectrum Sports, 506 U.S. at 457).  It is the plaintiff's burden to define the relevant geographic market and product market and "present sufficient evidence from which a reasonable jury could find the existence of the proposed relevant market." Coastal Fuels Inc., 79 F.3d at 196.  Determining market power is only possible once the relevant market has been defined. Id.  The Supreme Court has cautioned that "intent to monopolize ... is something more than an intent to compete vigorously." Spectrum Sports, 506 U.S. at 459. Moreover, "the federal antitrust laws ... do not create a federal law of unfair competition or purport

to afford remedies for all torts committed by or against persons engaged in interstate commerce."

Brooke Group v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 225 (1993).

Banco Popular argues that there is no genuine issue with respect to the monopolization claims because none of the allegations or evidence demonstrates that any improper conduct has taken place. Banco Popular points to various pieces of evidence in support of its argument that there is no genuine dispute of material fact with respect to the monopolization claim. First, Banco Popular observes that Ticket Center alleged that Banco Popular pursued contracts with the same entities with which Ticket Center had negotiated contracts and alleged that Banco Popular used confidential information without specifying in its allegations what the information was or how it was used. Banco Popular argues that these allegations suggest nothing illegal and are, "at best, examples of vigorous competition." (Docket No. 164, p. 44). Second, Ticket Center alleges that Banco Popular invested in other businesses to grow its own business, but these allegations suggest nothing illegal or relevant to this case. Third, Banco Popular argues that Ticket Center's general suggestions that Banco Popular caused other ticket processing companies to go out of business do not actually allege any illegal conduct and the facts do not support such suggestions. Fourth, Banco Popular argues that Ticket Center's allegations concerning the Coliseum are precluded by the state court action, and moreover, there is no evidence of wrongdoing on the part of Banco Popular. Fifth, Ticket Center's allegations concerning alleged unreasonable or predatory pricing do not actually allege any antitrust violations. Finally, Banco Popular argues that Ticket Center has failed to plead facts alleging that Banco Popular had market power or that any actions by Banco Popular harmed competition.

While Banco Popular bears responsibility for informing the court of the basis of its motion and showing an absence of evidence in support of Ticket Center's case, it is not necessary that Banco Popular produce affidavits or other evidence to prove the absence of a fact for which Ticket Center bears the burden of proof. Celotex Corp., 477 U.S. at 325. Banco Popular's arguments concerning the *absence* of any allegations or evidence of illegal conduct, market power, or competitive harm are sufficient to shift the burden to Ticket Center to demonstrate that there is a genuine dispute of

material fact on this claim.  See id. ("the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an *absence* of evidence to support the nonmoving party's case") (emphasis added).

Ticket Center raises various arguments concerning alleged improper practices, although in all but one instance it offers nothing more than "mere allegations" which fail to satisfy its burden of presenting "definite, competent evidence to rebut the motion."  Libertad, 53 F.3d at 435.  Thus, Ticket Center's burden is not satisfied by its allegations and unsupported arguments about (1) Banco Popular's efforts to eliminate other competitors, an argument which is contradicted by Banco Popular's evidence; (see Docket No. 161, p. 56, 57, 58); (2) the "highly suspect" selection process for the Coliseum ticketing services provider, an argument which is not supported by any admissible evidence[13] (Docket No. 184, ¶ 19); (3) Banco Popular's anti-competitive pricing practices, an argument which is not supported by any admissible evidence[14] (Id., ¶ 22); or (4) Banco Popular's use of its dominance in the electronic transaction market to monopolize the ticket market, an argument which is not supported by any evidence (Docket No. 185, p. 9).

The only argument supported by admissible evidence is Ticket Center's contention that in negotiations between 1996 and 2001, Banco Popular misled Ticket Center concerning its interest in a joint venture between the two entities and induced Ticket Center to provide Banco Popular with confidential and proprietary information concerning its business and the ticket processing market generally.  (Docket No. 185, p.8).  This argument is supported by several assertions in Ticket Center's opposing statement of uncontested facts supported by Mr. A. Grau's declaration.  (Docket

---

[13] Ticket Center cites only to its own pleadings in the state court proceedings, not to any "competent knowledge."  Libertad, 53 F.3d at 435.

[14] The only record evidence in support of this assertion is the declaration of Mr. A. Grau, which is not based on personal knowledge in violation of Rule 56(e), and an untranslated copy of Spanish-language advertisements announcing ticket prices, which fails to comply with the requirement of Local Rule 10(b) that Spanish language documents be accompanied with an English translation.  Moreover, even if these pieces of evidence were admissible, none of them contains facts suggesting that the prices were anti-competitive or in any way illegal.

No. 184, p. 13-15).  Because Banco Popular does not contest these facts, the court deems them as

true.  D.P.R.R. 56(e).  These facts describe discussions between the two companies in which Banco

Popular represented an interest in accessing Ticket Center's inventory and engaging Ticket Center

to serve as the ticket provider for a Banco Popular entertainment Internet site.  (Docket No. 184-3,

¶ 4(f)).   Over  the  course  of  these  discussions,  Ticket  Center  provided  Banco  Popular  with

confidential information concerning its business plans and the ticketing market in Puerto Rico.  (Id.,

¶ 4(g)).  Ticket Center was later informed that Banco Popular had decided to launch its own ticket

services  operation.  (Docket No. 184, p. 14).   These  facts,  however,  do  not  give  rise  to  a

monopolization claim.  Even if these facts could be used to establish some sort of business tort

claim,"the federal antitrust laws ... do not create a federal law of unfair competition or purport to

afford remedies for all torts committed by or against persons engaged in interstate commerce."

Brooke Group, 509 U.S. at 225.  More specifically, Ticket Center fails to provide any evidence

concerning the geographic or product scope of the relevant market, or of Banco Popular's market

share  in  that  market.   See  Spectrum Sports, 506 U.S. at 459 ("demonstrating  the  dangerous

probability  of  monopolization  in  an  attempt  case []  requires  inquiry  into  the  relevant product and

geographic market and the defendant's economic power in that market").  While it may be true – as

repeatedly urged by Ticket Center – that summary judgment "should be used sparingly in complex

antitrust litigation where *motive and intent* play leading roles," Poller v. Columbia Broadcasting Sys.,

368 U.S. 464, 473 (1962) (emphasis added), summary judgment is appropriate here where Ticket

Center fails to demonstrate a genuine issue of material fact with respect to *any* element of a

monopolization claim.

        Therefore, summary judgment for Banco Popular is granted on the fifth cause of action

alleging violations of section 2 of the Sherman Act.

        **C.      Puerto Rico State Law Claims (Counts VI and VII)**

        Ticket Center also alleges violations of Puerto Rico's antitrust law and tort law (Claims VI,

VII).  Specifically, Ticket Center alleges violations of antitrust provisions 10 L.P.R.A. sections 258,

260, and 262, and tort statute Article 1802, 31 L.P.R.A. section 5141.

Section 258 of Puerto Rico's antitrust law, prohibiting contracts or conspiracies in unreasonable restraint of trade, "mirrors the language of Section 1 of the Sherman Act" and therefore courts have "treated the two provisions as coextensive." Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 16 (1st Cir. 2003). Likewise, section 260, prohibiting monopolies and attempted monopolization, tracks the language of section 2 the Sherman Act and should be analyzed under the same criteria. Coastal Fuels Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st Cir. 1996). Therefore, summary judgment should be granted for Banco Popular on the claims under sections 258 and 260 (Count VI, insofar as it alleges violations of 10 L.P.R.A. §§ 258 and 260) for the reasoning set forth above in connection with Ticket Center's Sherman Act claims. See sections II.A.1., II.B., *supra*.

Ticket Center also alleges violations of an antitrust statute prohibiting exclusive dealing agreements that have the effect of lessening competition or tending to create a monopoly, 10 L.P.R.A. § 262, and violations of Article 1802, 31 L.P.R.A. § 5141. Banco Popular does not directly address these claims. However, having found summary judgment should be granted for Banco Popular on all of Ticket Center's federal claims, the court declines to exercise its supplemental jurisdiction over these remaining state law claims. See 28 U.S.C. § 1367 (c); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Therefore, Count VI (insofar as it alleges a violation of 10 L.P.R.A. § 262) and Count VII are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Banco Popular's motion for summary judgment is **GRANTED**.[15] Counts I through V and Count VI (insofar as it alleges violations of 10 L.P.R.A. §§ 258 and 260) are dismissed with prejudice. Count VI (insofar as it alleges a violation of 10 L.P.R.A.

---

[15] Based on the disposition of Banco Popular's motion for summary judgment, I do not need to reach Banco Popular's supplemental motion to dismiss, or in the alternative, for summary judgment (Docket No. 217).

§ 262) and Count VII are dismissed without prejudice.

> **IT IS SO ORDERED**.

In San Juan, Puerto Rico, on this 31st day of October, 2008.


<u>**S/Bruce J. McGiverin**</u>
BRUCE J. McGIVERIN
United States Magistrate Judge